UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| AMERICAN REALTY INVESTORS, INC.; TRANSCONTINENTAL REALTY INVESTORS, INC.; INCOME OPPORTUNITY REALTY INVESTORS, INC.; and PILLAR INCOME ASSET MANAGEMENT, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PRIME INCOME ASSET MANAGEMENT, LLC; PRIME INCOME ASSET MANAGEMENT, INC.; and HOMETOWN 2006-1 1925 VALLEY VIEW, LLC, <br><br> Defendants. | Case No. 2:13-cv-00278-APG-CWH <br><br> **ORDER DENYING RECONSIDERATION** |

Presently before the Court are Plaintiffs' motion for reconsideration (Dkt. No. 56) and motion for stay pending appeal (Dkt. No. 59). For the reasons set forth below, the Court denies both.

I. **BACKGROUND**

The relevant factual and procedural background is included in the Court's "Order Granting Motion for Leave to File Supplemental Evidence and Denying Motion to Remand" (the "Prior Order," Dkt. No. 52).

## II. ANALYSIS

### A. Legal Standard — "Reconsideration"

The district court's discretion to alter or amend (i.e., reconsider) an order under Rule 54(b) is governed by the law-of-the-case doctrine. *W. Birkenfeld Trust v. Bailey*, 837 F. Supp. 1083, 1085 (E.D. Wash. 1983). Three exceptions to this doctrine permit the court to alter its prior decision, as long as the court has not been divested of jurisdiction over the matter: "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence" has surfaced that was not previously obtainable in the exercise of due diligence. *Reed v. Town of Gilbert, Ariz.*, 707 F.3d 1057, 1067 n.9 (9th Cir. 2013); *U.S. v. Matthews*, 643 F.3d 9, 14 (1st Cir. 2011). Plaintiffs cite to no intervening change in law or newly surfaced evidence, so the pertinent question is whether the Prior Order was clear legal error and worked a manifest injustice against Plaintiffs.

### B. Legal Standard — Fraudulent Joinder

"Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence is ignored for purposes of determining diversity, if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (internal quotation marks and citation omitted).

### C. Alter Ego Claim — Justiciable Controversy

"[A] justiciable controversy [is] a preliminary hurdle to an award of declaratory relief." *Doe v. Bryan*, 728 P.2d 443, 444 (Nev. 1986). Moreover, "litigated matters must present an existing controversy, not merely the prospect of a future problem." *Id.* The Nevada Supreme Court has articulated the following definition of justiciable controversy:

> "(1) there must exist a justiciable controversy; that is to say, a controversy in which a claim of right is asserted against one who has an interest in contesting it; (2) the controversy must be between persons whose interests are adverse; (3) the party seeking declaratory relief must have a legal interest in the controversy, that is to say, a legally protectable interest; and (4) the issue involved in the controversy must be ripe for judicial determination."

2

*Id.* (quoting *Kress v. Corey*, 189 P.2d 352, 364 (Nev. 1948)).

### 1. Premature Decision of the Merits

Plaintiffs rely on *Hunter v. Phillip Morris USA*, 582 F.3d 1039 (9th Cir. 2009), to argue that justiciability was prematurely raised by the Court, and that it should have been raised, if at all, only by Hometown LLC as a defense in the state court, post-remand. As explained above, the primary inquiry regarding fraudulent joinder is whether Plaintiffs have failed to state a claim under the settled rules of the State of Nevada.

In *Hunter*, the Ninth Circuit rejected a federal preemption defense as part of the fraudulent joinder analysis because the defense relied on an analysis of federal law. In addition, using preemption to determine removal jurisdiction violated the well-pleaded complaint rule, which provides that federal jurisdiction must be evident on the face of the complaint and cannot be solely supported by an anticipated defense that relies on federal law. *Id.* at 1042–43.

Here, the justiciability analysis relies entirely on Nevada law, and justiciability is a "preliminary hurdle" to the exercise of jurisdiction rather than a defense to the merits. *Bryan*, 728 P.2d at 444. In the Prior Order, the Court properly looked at Nevada's justiciability rules to decide the motion to remand. Finally, on motions to remand, district courts regularly analyze the justiciability of claims. *See, e.g., Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001–02 (9th Cir. 2001) (analyzing Article III standing); *Panhandle Area Council v. State of Idaho*, 393 F. Supp. 2d 1038, 1040–41 (assessing ripeness); *Thorp v. Kepoo*, 100 F. Supp. 2d 1258, 1262 (D. Haw. 2000) (same); *Picard v. Bay Area Rapid Transit Dist.*, 823 F. Supp. 1519, 1528 (N.D. Cal. 1993) (same).

### 2. Not Seeking "Precisely the Same Result"

Plaintiffs argue there is adversity among them and defendants Prime Income Asset Management, LLC and Prime Income Asset Management, Inc. (the "Prime Defendants") because they do not seek "precisely the same result." Plaintiffs rely on *GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, which held that "there is no Art. III case or controversy when the parties desire 'precisely the same result.'" 445 U.S. 375, 383 (1980). Plaintiffs' argument is misguided for two reasons.

First, Nevada law guides the justiciability analysis for fraudulent joinder. Of course this Court cannot hear a matter if there is no Article III case or controversy. But before reaching that question, the issue of justiciability under Nevada law must be resolved to determine fraudulent joinder. As discussed in the Prior Order, the Prime Defendants have no interest in contesting Plaintiffs' claim of a lack of alter ego liability. *Doe v. Bryan*, 728 P.2d 443, 444 (Nev. 1986). This is confirmed by their ongoing agreement with the positions Plaintiffs have asserted in this case. At some level of abstraction, Plaintiffs and the Prime Defendants appear to have adverse interests. Plaintiffs (larger, public entities) do not want to be liable for the Prime Defendants' (smaller, private entities) obligations, yet the Prime Defendants allegedly would benefit if they could share their liabilities with Plaintiffs. But this alleged adversity has not meaningfully borne out in this case, and the Prime Defendants fail to explain how they would benefit from being responsible for Plaintiffs' liabilities. Alter ego liability is typically a two-way street. *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 269 n.12 (D. Del. 1989) ("[W]here the shareholder is the alter ego of the corporation, the corporation is likewise the alter ego of its shareholder."). Even if the adversity were sufficient, however, the Prime Defendants have showed no interest in *contesting* the claim of no alter ego liability. Therefore, under *Doe v. Bryan*, the alter ego claim does not present a justiciable controversy under Nevada law.

Second, Plaintiffs are correct that an agreement by plaintiffs and defendants on the desired judicial relief does not itself render a case non-justiciable. *GTE Sylvania*, 455 U.S. at 382–383. However, Plaintiffs' attempt to expand the holding of *GTE Sylvania* to every case where the parties agree on the relief sought is unwarranted. In *GTE Sylvania*, the defendants agreed to the relief sought by the plaintiffs from the U.S. District Court for the District of Columbia ("D.C. Court"): a declaration under the Freedom of Information Act ("FOIA") that the Consumer Product Safety Commission ("CPSC") had to release certain accident reports. Before the declaratory relief action was filed in the D.C. Court, the U.S. District Court for the District of Delaware ("Delaware Court") had issued an injunction prohibiting release of the reports pending trial in a separate action. The CPSC stated that it would have released the documents absent the injunction from the Delaware Court.

4

Declaratory relief from the D.C. Court would have had a significantly different effect on the parties. If the declaration issued and the CPSC was forced to turn over the documents, then CPSC's obedience of the Delaware Court's injunction would have amounted to a violation of FOIA. "In short, the issue in this case is whether, given the existence of the Delaware injunction, the CPSC has violated [FOIA] at all." *Id.* at 383. The Supreme Court remarked that the "defendants and the requesters *sharply disagree* on this question, as has been evidenced at every stage of litigation. If the requesters prevail on the merits of their claim [in the D.C. Court], the CPSC will be subject to directly contradictory court orders, a prospect which the federal defendants naturally wish to avoid." *Id.* (emphasis added).

In essence, the dispute in *GTE Sylvania* was about the ultimate legal effect of the desired declaratory relief. The parties agreed that declaratory relief was warranted under the law, but disagreed on whether that declaration would render the CPSC's prior conduct a violation of federal law. The CPSC also wanted to avoid facing contradictory court orders. This sort of adversity is not present among Plaintiffs and the Prime Defendants in this case. They may disagree whether alter ego liability is ultimately beneficial to them, but they do not dispute the legal effect of a declaration of no alter ego liability. There is no question, let alone a "sharp disagreement," that they would become liable for each other's obligations. Furthermore, the Prime Defendants would not face contradictory court orders were this Court to issue a declaration in Plaintiffs' favor.

The Court did not commit clear legal error in holding that the alter ego claim does not present a justiciable controversy under Nevada law with regard to the Prime Defendants.

### D.   Contribution and Indemnity Claims — Ripeness

"The factors to be weighed in deciding whether a case is ripe for judicial review include: (1) the hardship to the parties of withholding judicial review, and (2) the suitability of the issues for review." *Herbst Gaming v. Heller*, 141 P.3d 1224, 1231 (Nev. 2006) (internal quotation marks and citation omitted). Federal courts look to the same two factors to determine the ripeness

5

of an issue.[1] *Ass'n of Am. Medical Colleges v. U.S.*, 217 F.3d 770, 779–80 (9th Cir. 2000). Issues are generally considered to be suitable for review if they are questions of law that do not depend on additional factual development. *See id.* at 780; *T.R. v. State of Nevada (In re T.R)*, 80 P.3d 1276, 1280 (Nev. 2003).

> A primary focus in such [ripeness] cases has been the degree to which the harm alleged by the party seeking review is sufficiently concrete, rather than remote or hypothetical, to yield a justiciable controversy. Alleged harm that is speculative or hypothetical is insufficient: an existing controversy must be present. While harm need not already have been suffered, it must be *probable* for the issue to be ripe for judicial review.

*Herbst Gaming*, 141 P.3d at 1231 (internal quotation marks and citation omitted) (emphasis added).

Plaintiffs cite various cases holding that disputes between insurers and insureds as to the duties imposed by an insurance contract meet the "case and controversy" requirement of Article III. But as noted above, the pertinent ripeness inquiry here depends on Nevada law rather than the U.S. Constitution and federal law. The alleged harm at issue is a finding of liability against Plaintiffs in the Texas Fraud Lawsuit (where they are defendants). The existence of that lawsuit makes liability possible, but not *probable*. And in the only similar Nevada case, the Nevada Supreme Court held that a tort victim could not litigate the scope of the tortfeasor's insurance coverage before obtaining a determination of primary liability. *Knittle v. Progressive Ins. Co.*, 908 P.2d 724, 724 (Nev. 1996).

To the extent that federal cases examining ripeness under Article III for insured-insurer disputes are applicable, Plaintiffs' argument still fails. This case is not an insurance dispute. The issues of contribution and indemnity are analogous, but Plaintiffs and the Prime Defendants are not in an insured-insurer relationship. Declaratory judgments are regularly issued as a means of interpreting contracts and other written documents. *U.S. v. Sacramento Municipal Utility Dist.*,

---

[1] Although the Nevada Declaratory Judgment Act and the federal Declaratory Judgment Act are not coextensive on all issues, the Court sees no distinction between them for the purpose of determining whether the instant claims present justiciable controversies that are ripe for judicial review. The Court thus looks to federal case law to assist in the ripeness inquiry.

652 F.2d 1341, 1342 (9th Cir. 1981); *see also Jaynes Corp. v. Am. Safety Indemnity Co.*, 925 F. Supp. 2d 1095, 1101–02 (D. Nev. 2012). But there is no such contract to interpret here. The Supreme Court and Ninth Circuit cases cited by Plaintiffs involve disputes between insurers and insureds. *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270 (1941); *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998); *Am. States Ins. Co. v. Kearns*, 15 F.3d 142 (9th Cir. 1994). As such, they are not binding in this case; nor do they establish a bright-line rule that contribution and indemnification claims in insurer-insured disputes are *always* ripe before a finding of primary liability. To the contrary, even in such cases, federal courts have not unanimously held that a claim seeking a declaration of coverage is ripe. In *Hecht*, this Court held that contribution and indemnification claims brought in a separate action from the primary liability claim are generally not ripe for adjudication. *Hecht v. Summerlin Life Ins. Co.*, 536 F. Supp. 2d 1236, 1240–41 (D. Nev. 2008) (cataloging applicable cases).[2]

For the reasons set forth in the Prior Order, the Court finds the distinction highlighted in *Hecht* is compelling. In addition, Plaintiffs will suffer no hardship by raising contribution and indemnification in the Texas Fraud Lawsuit rather than in the instant case. The Court did not commit clear legal error in holding that the contribution and indemnification claims are not ripe under Nevada law.

### 3. Needless Determination of State Law

District courts "should avoid needless determination of state law issues[.]" *Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 803 (9th Cir. 2002). "A 'needless determination of state law' may involve an ongoing parallel state proceeding regarding the 'precise state law issue,' an area of law Congress expressly reserved to the states, or a lawsuit with no compelling federal interest (e.g., a diversity action)." *Keown v. Tudor Ins. Co.*, 621 F. Supp. 2d 1025, 1031

---

[2] Moreover, insurers have a distinct, heightened interest in determining coverage before liability. Insurance policies usually include a duty to defend. If an insurer elects not to defend and a court determines that the insurer should have defended, the insurer can be liable for punitive damages for bad faith. The decision not to defend, if incorrect, creates a significant risk of imminent harm to an insurer. Neither Plaintiffs nor the Prime Defendants face such imminent harm; there is no duty to defend at issue in this case.

(D. Haw. 2008) (quoting *Cont'l Cas. Co. v. Robsac Indus.*, 847 F.2d 1367, 1371–72 (9th Cir. 1991), *overruled in part on other grounds by Dizol*, 133 F.3d at 1225). "However, there is no presumption in favor of abstention in declaratory actions generally, nor in insurance cases specifically." *Dizol*, 133 F.3d at 1225. Courts should strive to avoid piecemeal litigation. "Remanding only the declaratory component of ... an action will frequently produce piecemeal litigation, a result which the Declaratory Judgment Act was intended to avoid, rather than promote." *Id.* at 1225–26.

Plaintiffs assert that there are three questions of first impression under Nevada law: (1) whether there is a justiciable controversy under Nevada law for the purposes of a declaratory judgment when the parties agree but do not desire "precisely the same result;" (2) whether Plaintiffs' contribution and indemnity claims can be determined in this action; and (3) whether an LLC is subject to alter ego liability. Of these, only the third question gives some pause to the Court, as it is an unsettled issue of state law.

As there is no ongoing parallel proceeding and Congress has not expressly reserved the issue of alter ego liability to the states, the question is whether there is a compelling federal interest in the issue. The federal Declaratory Judgment Act's desire to avoid piecemeal litigation is sufficiently compelling. Currently, both the Texas Fraud Lawsuit and the instant case are before this Court. Remanding only the alter ego claim would create piecemeal litigation. Splitting the cases between state and federal court would not only significantly heighten the risk of judicial inefficiency, it seems quite likely to cause unnecessary delay. *Dizol* counsels against this result. 133 F.3d at 1225–26. Furthermore, the Texas Fraud Lawsuit and the instant case are capable of consolidation as long as they remain in the same court.

In light of the lack of a presumption in favor of abstention and the federal interest of avoiding piecemeal litigation, the determination of the state law issue of alter ego liability is not "needless." The Court declines to abstain.

E.   **Interlocutory Appeal**

An immediate appeal of an order that is otherwise unappealable is permissible if the district judge is "of the opinion that such order involves a controlling question of law as to which

there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Once the district judge certifies an interlocutory appeal in writing, the Court of Appeals has the discretion to permit the appeal. *Id.* A question of law is controlling if "the resolution of that issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1982).

> A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed. Stated another way, when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue *may* be certified for interlocutory appeal without first awaiting development of contradictory precedent.

*Reese*, 643 F.3d at 688 (emphasis added). Notably, the district court is not required to certify an interlocutory appeal if fair-minded jurists might disagree; the court retains some level of discretion as it "may" certify a question for appeal. As to material advancement, the appeal need not have a final, dispositive effect on the litigation. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). Finally, the standards for certifying an appeal under 28 U.S.C. § 1292(b) are very strict; appeals should be certified only in extraordinary situations. *Syufy Enters. v. Am. Multi-Cinema, Inc.*, 694 F. Supp. 725, 729 (N.D. Cal. 1988); *see Robbins Co. v. Lawrence Mfg. Co.*, 482 F.2d 426, 429 (9th Cir. 1973) ("The Court of Appeals will grant such interlocutory review only in extraordinary cases where decision might avoid protracted and expensive litigation.").

The questions on appeal would be (1) whether the alter ego claim presents a justiciable controversy under Nevada law; and (2) whether the contribution and indemnification claims are ripe for judicial review under Nevada law. As to the first issue, Nevada law is quite settled on what constitutes a justiciable controversy. *Doe v. Bryan*, 728 P.2d 443, 444 (Nev. 1986). The application of the law to the present facts, while not entirely straightforward, is not so complicated or novel that reasonable jurists would disagree. Plaintiffs' and the Prime Defendants' disagreement with the Court's decision is insufficient to establish a substantial ground for difference of opinion.

Regarding the second issue, Nevada ripeness law is also settled. Although there are no Nevada Supreme Court cases on all fours with the instant facts, *Knittle* is very instructive. 908 P.2d 724. Furthermore, the Court is skeptical that an interlocutory appeal would materially advance the ultimate termination of the litigation. Before the Prime Defendants can be held liable for contribution and indemnification, the Plaintiffs' liability must be established in the Texas Fraud Lawsuit. Moreover, most of the factors that could give rise to alter ego liability likely will be explored in the Texas Fraud Lawsuit. If anything, an interlocutory appeal would dramatically slow this case. Finally, the parties will have an opportunity to appeal these issues in the regular course of events.

For the foregoing reasons, the Court denies the request to certify an interlocutory appeal of the denial of the motion to remand.

### F. Stay Pending Appeal

In light of the Court's denial of the request to certify an interlocutory appeal, the motion for stay pending appeal is moot.

## III. CONCLUSION

For the reasons set forth above, the Court hereby ORDERS:

1. Plaintiffs' motion for reconsideration (Dkt. No. 56) is DENIED.

2. Plaintiffs' request for certification of an interlocutory appeal is DENIED.

3. Plaintiffs' motion for stay pending appeal (Dkt. No. 59) is DENIED as moot.

DATED this 4th day of November, 2013.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE